May be seated. Thank you, Your Honor. May it please the court under Local Rule 46A, John Corzine here from the Wake Forest Appellate Clinic. It's my pleasure to introduce the student counsel who will argue today and that's Spencer Osborne. Also with us are two other student counsel who have been with us on the team for this representation since the beginning, Alexis Parker and Jenna White. Thank you, Your Honor, for this opportunity. Thank you, Your Honor. Good morning and may it please the court. My name is Spencer Osborne and I have the privilege of representing Mr. Terrence Henderson, the Plaintiff Appellant in this case. Inmates do not lose their entitlement to due process protections on the prison's walls. Instead, the 14th Amendment demands that prison officials observe certain procedural safeguards before depriving an inmate of his property. Namely, prisoners subject to disciplinary deprivations of property are entitled to notice, the opportunity to object and to be heard, and to the evidence relied upon by prison officials in reaching their decision. The first question presented here is whether defendants provided Mr. Henderson with those fundamental due process protections over the course of his life. So I understand, I'm sorry, what were the, what is the prisoner entitled to pre-deprivation? Yes, Your Honor, under the Supreme Court's holding in Wolf v. McDonnell. So this is a Wolf case, okay. Yes, Your Honor. Do you think there has to be a hearing? There does, Your Honor, but we're contending that there must be, Mr. Henderson's arguing for the constitutional minimum of due process in this case, that is. I just want to know what you think that is. With respect to the restitution amount specifically. What do you think the prison officials here had to do before they took the money out of his account? Under the due process clause, they had to provide Mr. Henderson with notice, the opportunity to be heard and object to the specific amount of restitution. Does that have to be in a live hearing, or is it enough if he can file a grievance? It is, it was not enough in this case that he could file a grievance, and presumably in other cases in Virginia prisons as well. That's because the pro forma written disciplinary appeals process in this case was not sufficient to provide Mr. Henderson with due process. And specifically, in this case in particular, it's because defendants debited Mr. Henderson's prison trust account. 100% of funds in that account were taken away from Mr. Henderson before even receiving Mr. Henderson's first administrative appeal. So for that reason, those appeals cannot be said to have been. I'm just trying to figure out, like, the rule you want us to adopt is, colon, before you take money out of the prisoner's account, you must give him notice and a way to object, which doesn't have to be a hearing. Putting to one side the facts of this case, does there have to be a live hearing like in Wolfe? Yes, Your Honor, it must be. And particularly under the state of the law in Virginia right now, Virginia Department of Corrections operating procedure, the 2021 iteration of that operating procedure, defines due process as the opportunity to appear in person. So, and this is particularly important with respect to restitution as opposed to other types of disciplinary penalties because Mr. Henderson and other inmates deserve the ability to respond directly to the amount of restitution imposed and to be presented with the evidence that was the basis of the calculation. So notice, a hearing, and what else? Notice, a hearing, and the evidence relied upon by prison officials in reaching their decision with respect to the restitution amount. Now, here would the hospital bills have been enough? The hospital bills could have been enough, which were ultimately provided to Mr. Henderson six years after the initial hearing in 2021. Presumably there are various types of evidence that prison officials should not be required to give inmates. So in this case, if he had gotten notice and hearing before they took the money out of his account and at the hearing they had said here is the evidence, it is these hospital bills, we would have been square? Absolutely, Your Honor. So which of the frameworks are you relying here, the Matthews framework or the Wolfe framework? Because it looks like your Matthews framework. So I think it's both, Your Honor. Wolfe is important in any prison due process case because it, while acknowledging that prisoners are not entitled to the full panoply of due process protections that non-incarcerated people are entitled to, it also lays out what Judge Harris and I just discussed, which was the requirements of notice, the opportunity to be heard, and at least some of the evidence relied upon. Matthews v. Eldridge becomes important when a court is assessing these specific types of process that were given in a specific case, particularly when an inmate like Mr. Henderson is arguing that other procedures should have been used. So those factors under Matthews v. Eldridge are, of course, the private interest affected, that is a prisoner's protected property interest over the money in his account. The second is the risk of the erroneous deprivation, which we contend is quite high in cases like this. And the third is the government's interest, and we obviously can see that the government does have a very strong interest in collecting restitution from inmates within the prison, but they must collect that restitution consistent with due process protections. Even if it's a due process error, why is it not harmless? Can you say that again? Why is it not harmless? Yes, Your Honor. So defendants rely on this court's 2019 decision in Lanier v. Wilson for their contention, for the proposition, rather, that procedural errors in disciplinary proceedings are subject to harmless error review. That proposition, standing alone, is entirely correct, but it's irrelevant to what happened in this case because, again, the rule announced in Lanier is about what takes place within disciplinary proceedings. Both Lanier and every case cited therein deals expressly with evidentiary determinations within prison disciplinary proceedings. For example, if a given hearings officer refuses to admit certain video evidence and then goes on to find an inmate guilty of an assault, that would be subject to harmless error review. Mr. Henderson's contention is entirely different. Mr. Henderson's claim is that defendants failed to provide a pre-deprivation hearing at all and that the post- deprivation hearing they provided in 2021 was excessively delayed by over five and a half years. So it's not about what happened substantively within either of these hearings, it's about the timing and if they took place at all. So, I guess, just to follow up, just to be clear in your answer, you're saying, is there any evidence that can be pointed to with regard to Mr. Henderson that would have been there in 2015 would be there in 2021? We don't know the answer to that question, Your Honor, and neither did the district court when it granted summary judgment. Presumably the That's right. I thought that the argument before the district court, there was an effort to answer that question and the argument was, well, his recollection has faded and the district court addressed that and said, basically, you haven't really shown that and it's too speculative. So, I don't know what you mean when you say the district court didn't know that. The district court heard argument on that and made a ruling. That's correct, Your Honor. Mr. Henderson in the court below was, of course, proceeding pro se and argued only that his memory had become lost in the intervening six years and that maybe a certain witness that would have been privy to what happened in the underlying assault was not available in 2021. We've not argued that in our briefs to this court. What we have argued is, one, harmless error review does not apply to this because we're not challenging the substance of what took place in these prison disciplinary proceedings. I'm sorry, so the premise there must be, and it is only in Wolf that there is a harmless error component to a due process case. I think that's right. The Supreme Court in Wolf did not apply harmless error review, which is why defendants rely exclusively, and I error and the district court did the same thing, citing that case and using interchangeably harmless error and prejudice. But even if harmless error or prejudice is to be inserted into this case and required as a showing for Mr. Henderson, we think that the six-year delay in this case should allow for a presumption of prejudice. And even if that presumption alone does not suffice, there's no basis for the 2021 hearing, that is, the calculations of this odd-dollar restitution amount in 2021 that would have been different from the initial 2015 hearing. So I think where the parties may have been miscommunicating or talking over one another in our briefs is that Mr. Henderson was prejudiced in that his injury, the injury over which he sued in 2018, was that first three-year period during which his account was frozen. So that alone prejudiced him. It was that delay. How can that be right if it turns out once he gets the hearing that you think he should have, six years delayed, understood, but at the end of that hearing with all the procedural protections that you think are necessary, he actually owed that money all along? So that question... Is that what harmless error looks like? I don't think so, Your Honor. I think really what that question is getting at is whether Mr. Henderson's claim had been rendered moot. I think it's important to realize that Mr. Henderson sued in 2018, three years after the initial hearing. So that means Mr. Henderson was remained in the initial hearing with his account frozen. On page 202 of the Joint Appendix, he mentions that his account had been frozen and of no use to him. He was unable to purchase hygiene products. He was unable to purchase food. But I'm saying at the end of the day it turns out that was the right answer. He wasn't supposed to be able to purchase hygiene. I mean, he should have. I'm not saying this in a platonic ideal way, but it turns out he owed all of that money to the prison. So it's hard for me to see how the prejudice is he didn't have the money. It turned out that... I think I would agree with you, but I would change one thing about what you said. It did not turn out that he owed all that money to the prison. It turned out that the prison unilaterally decided to reconvene the hearing six years later and present Mr. Henderson with some evidence that we have not seen, that does not appear in the record, and that Mr. Henderson contended was wrong. Mr. Henderson, on page 305 of the record, mentions that the receipts and documentation provided to him to supposedly show the cost of treatment received by the victim during the 2021 hearing actually showed an amount of only $9,389, not the $10,352 that the prison had claimed. Has he subtracted out the transportation costs? Potentially, Your Honor. There's an ambiguity... He agreed to that, right? He brought that up through a grievance. He appealed. No, we're allowed to take the That's correct. There's some ambiguity about the role of transportation costs in this case. The 2011 Virginia Department of Corrections operating procedure that was in effect at the time of the 2015 hearing appears to have allowed for the imposition of transportation costs. That operating procedure is routinely amended, and it's not clear which one was being applied to his 2015 hearing, let alone the 2021 hearing, but that could be potentially the source of the conflict about the amount. I'd like to go back briefly, though, because none of this matters unless this court holds that a property interest even exists in this case. That is, the court doesn't even reach a due process analysis before finding a property interest. As the Third Circuit noted in a case called Reynolds v. Wagner in 1997, it is clear beyond hope of contradiction that an inmate has a property interest, and the balance is held in his accounts. Indeed, many other courts have held similarly. The Sixth Circuit in Sickles v. Campbell County, the Eighth Circuit in a case called Selvey v. Peratt in 1977, the Ninth Circuit in a case called Quick v. Jones in 1985, and indeed the same district court from which Mr. Henderson now appeals held the same thing in Waters v. Bass in 2004, saying that inmates possess a property interest in the funds over their accounts. Can I ask you, just because you were able to cite all those cases for that, to the extent your client is seeking damages, isn't there a pretty big qualified immunity problem here? I can't find a single case saying an inmate is entitled to a predeprivation hearing before money comes out of an account. There is one, just to respond to that second point before turning directly to qualified immunity, the strongest case in our favor on that point would be Montanez v. the Secretary. It doesn't say you need a hearing, it just says, I think it very conspicuously does not say you actually need a hearing. It does not say hearing specifically? There is no case out there saying that an inmate is entitled to what you say they're entitled to, so I don't see how damages can be part of this case. I would disagree only because I think where we're miscommunicating is on the word hearing. So there's a distinction between in-person hearing and... I asked you that. I thought you said it had to be an in-person live hearing. In Virginia, it has to, pursuant to the operating procedure that defines due process as the opportunity to appear in person. In the Pennsylvania operating procedure... The prison's operating procedures don't set the limits of the due process clause. I don't understand that. That's correct, Your Honor, and Mr. Henderson's due process claim is not premised upon those. You're relying on them, though, for the need to have an in-person hearing. We were relying on them for the need to have an in-person hearing given the inadequacy of the informal administrative appeals process within the prison. But if I could turn to your qualified immunity point, I'll be the first to concede that the clearly established prong of qualified immunity, it represents a hurdle to Mr. Henderson the same way it does for every plaintiff in cases in which... It's a hurdle. You can't get over it. I think we do get over it, Your Honor. What Supreme Court case or case from the circuit is going to say this is clearly established? Your Honor, so Anderson v. Creighton and its progeny makes clear that the right must be clearly established in a fairly particularized sense, such that a given state official knows that what he or she is doing violates the law. In this case, what Mr. Henderson is seeking is the constitutional minimum of a pre- if not for a pre-deprivation hearing, a timely post-deprivation hearing. In this case, he got neither. Now, we think that this court need not go into the qualified immunity analysis because, first and foremost, Mr. Henderson has not sued defendants in their individual capacities for damages at all. Under this court's holding in Biggs v. Meadows in 1995, when a plaintiff fails to plead expressly the capacity in which he has sued a defendant, personal or official, the court should examine the nature of the plaintiff's claims, the relief sought in the course of proceedings to determine that capacity. Your representation is your client is not seeking damages. That's correct, Your Honor. What does your client want? Specifically, Mr. Henderson is seeking a reconvene hearing at this point would be equally as constitutionally flawed as the one was in 2021. Mr. Heering is seeking a permanent prohibitory injunction against collection of further funds to the outstanding $5,111 amount. He's also seeking an injunction to have the $64.79 taken from him returned. That money, according to defendants at all times in this case, is sitting in a holding account. It in no way implicates Eleventh Amendment immunity, and the permanent prohibitory injunction from the future takings of funds would be consistent with the doctrine of Ex parte Young. We have to read the complaint especially generously to get there, right? Because the one box under remedies that is not checked is the injunction box. I would just add on that point that in a procedural due process case, particularly for prisoners proceeding under Section 1983 in the PLRA, it is incredibly difficult to receive damages. It would not even be clear what Mr. Henderson's damages would be in this case without a showing of physical injury, which he obviously does not have resulting from. I see my time has expired. May I answer your question? And so I think for that reason, Mr. Henderson is entitled to a liberal construction of his complaint and the add damn them clause he included at the complaint. Thank you. Good morning, Your Honor. I may please the court. Timothy Davis on behalf of the appellees. A couple points in response to the appellant's arguments raised today. First, it's the appellee's position that Mr. Henderson did receive all process that was due in the first instance that is following the 2015 hearing. He was given a hearing on the on the charge itself. He was notified that restitution would be imposed and what it would be based upon. He received notice of the amount of the restitution. He had an opportunity to appeal. There's no controlling case law in this circuit that requires additional protections beyond those. But they took the money before he appealed, right? So I don't know can we count the appeal as part of the process? Well, I guess it's post deprivation. Yes, and he had appealed, I believe, the appeal packet was provided to him December 30th of 2015. The withdrawal of funds was January 7th of 2016. I believe Mr. Henderson may have filed the appeal. It had not been, the the response had not been provided by that. So if that's the process you're saying the deprivation process is sufficient? In that respect, yes. Do you dispute that he had a protected interest in that money in his account? We do not. Can I ask you just a very, a question about the record that I had trouble figuring out and about the history of this case. So the first time it comes up on appeal, right, it's remanded for the district court to recalculate the statute of limitations, right, and apply equitable tolling and figure out if this first claim is barred or not. Did the district court do that? I couldn't find an order sort of discussing the issue on which we remanded. I'm not certain if that order is in the joint appendix, but the claim obviously was allowed to proceed. So I should assume the district court did the proper tolling analysis? We would be happy to supplement the appendix if your honor believes the I think it would just be good if we could all reassure ourselves that the issue on which we remanded the case was addressed by the district court. Yes, your honor. To address one of the arguments raised by Mr. Henderson's counsel and his argument, Judge Harris, as you noted, the process that is due here is not set by the agency's policy itself. The policy can create a protected interest, but the the scope of the actual due process that's due is constitutional in nature, and here it's the Wolf case that controls what practices need to be implemented for any deprivation here. Wolf does not specify any additional procedure necessary for a penalty determination in these cases. Wolf addresses the findings of guilt for present disciplinary cases. If we consider the Matthews factors here, I believe the most salient of those would be the second factor, the risk of erroneous deprivation and value of additional procedures, and that folds into our harmless error argument. The value of additional procedures here would be minimal. Guilt was already adjudicated. Mr. Henderson was aware that some restitution would be imposed for the agency to recoup the cost that it was charged for the victim's medical treatment. This is a simple objective determination. It is entirely based on what that bill amount is, and it was evenly apportioned between Mr. Henderson and the other inmate who was convicted for this offense. You think that's a simple matter? You're in prison. You're talking about people who have to live and survive on canteen and people giving them small amounts of money. You think that's insignificant, whether or not you have to pay thousands of dollars? You think that's insignificant? I wouldn't dispute the significance of that. I thought you said it wasn't significant, but it is significant, and he was entitled to a hearing, wasn't he? Don't you think? Not under the case law controlling in this circuit. I thought you had, well, didn't you have a hearing proceeding for a hearing? Not hearing necessarily, but some point of grievance, right? Correct? That's correct. He had an opportunity to appeal the disciplinary findings, including the assessment of the restitution. And that was a part of the punishment, correct? That's correct. All right, so but you're saying that he has to show, you said you have a defense of harmless error? Prejudice, I mean? That's correct, Your Honor. A slight and consolidated code for that? As well as the Lanier case? Well, you know, what about Lane, a hollow coal company that was cited in that case, and talking about what the show in terms of that this, you know, you have to show it in a sense of it talks about a fair opportunity to mount a meaningful defense, and part of that it says this does not require a showing of actual prejudice, in the sense that there is a reasonable likelihood that the claim would have been different. The consolidated code cited Hollow Lane, saying that it doesn't require actual prejudice, and that the result would have been different. How do you square that language and consolidated code with your position that he has to show prejudice? And prejudice means he would have had a different result here, right? In response to that, Your Honor, I would point to the case cited in Mr. Henderson's brief, FDIC versus Malin. That was a case from the Supreme Court, and that case pointed out that the significance of a delay, the prejudice arising from that is not inherent, it's contextual, and what the court looks... 2,000 days. Go ahead. So in that context, and significant amount of time that passed. Euphemism is very handy for you. Yes, it is significant. 2,000 days. There's no diminishment of the relevant evidence for determining this amount. It is a straightforward dollar amount that was charged to the agency for the victim's medical treatment, and the restitution under policy is a simple matter of reimbursement of the agency for the costs that it incurred. So just factually, I get your argument is that forget the late hearing. We didn't need that. We were all fine at the beginning because we gave him notice and a right to object through the grievance process, right? And that was the half pre, half post deprivation process. But I thought all he got at that point was a number. Here's a number, that's what it's gonna be. Like how is there a meaningful chance to object to that? He didn't even get the hospital bills, right? That is correct, Your Honor. The bills would have been known to the DOC staff who responded to his appeal, and so if Mr. Henderson had raised whether the amount was correct, then the respondent would have been able to double-check that documentation, and in any case that evidence was provided to Mr. Henderson in the second hearing. Yeah, but to the extent you're relying on the first hearing, your argument is, look, we gave him the number and he could take a grievance if he didn't, if he thought that number seemed high. That is correct. But we didn't have to show him the evidence on which we relied to get to that number. In this instance, correct, Your Honor. You didn't even have to wait for him to file a grievance. You could start taking the money in enforcement. Gotta add that to the facts of this case. Correct? It is correct that the appeal response had not been provided before the funds were deducted. So you give him a number, a plain number, and then you start enforcing that and taking his money, and to add insult to injury, put a freeze on it so that he can't even get family members to say, well can you give me $20 so I can get some cookies and chocolates or something like that? No, no, no. Anything that come in there, it's like a sieve. It goes right there. Unless you say that it's okay to treat, because you're an inmate, anything goes. But that's not what the law says. It has to be meaningful. And Lane, Hollow, says that, you know, it's a question about the prejudice showing it. That had to be actual. This case will go far. If this is the law, then pretty much you say that if we assess money, we just give you the number what it is, and we start taking it out. And if you later on, years later, maybe somebody we might tell you something. That's the law the Fourth Circuit should be? Respectfully, Your Honor, I'll disagree in a couple respects. And with the we're not disputing that the total dollar amount would be significant to Mr. Henderson, but that amount was in fact owed. That was the cost that the department incurred based on conduct that Mr. Henderson does not dispute that he's guilty of. It's like saying, yeah, okay, you in fact were guilty. We didn't have a trial for you, but you were in fact guilty, so there's no prejudice. I thought, you know, in America we hold to dear in terms of a person having the opportunity to stand in the well, or not stand in the well necessarily, or at least to know, to write a letter, scribble something, you know, like that, to do that, right? An opportunity just to speak to it, to know. Not just the answer is, well, you owed it anyway. You knew that he owed it, right? We know that now. But what the difference in terms of, I think, what our law says about process, even for people who are inmates, the least of these, if you will, the dispossessed, ones who have no portfolio at all. And I think it's particularly important in my significant case because I'm telling you, when you're in prison, in terms of, I used to do criminal defense work, you're sitting there, the people don't have family. As a matter of fact, I can tell you, one of the things a person said, I think, about being in prison was allowing them to watch other people who had canteen, they didn't. And they were eating their snacks and their Twinkies and things like that in front of them. It caused a lot of problems. So people, there's context to these things. So a couple other points of context here, Your Honor. Mr. Henderson is allowed a minimum carrying balance from month to month in his account. The account is $5, but it is not drawn down to zero. Could he use that $5 during the time you were taking it? Yes. And that is a monthly minimum. As well, Mr. Henderson does have other credits against his account. This restitution is not the sole encumbrance on his trust account. And in fact... If he had had some way to respond, he may have made, at that time, saying a plea of that, please don't take the money out of there, I need this. And he didn't have an opportunity to even do that. He had to ask for mercy. Don't you think mercy is also a part of the process? When you say, that's what I really do owe. Well, I owe it, but can you not take that much from me? Doesn't mercy have any portfolio question here, too? It's not just that, well, you owe the money. What else you got to say? I got to say, I have a personal circumstance and I want you to give me mercy. Do you think he's bereft of that, too? He can't do that? In terms of prejudice, would he be allowed not to respond, saying, here my circumstance, I'm trying to give the little bit of money I have because, you know, I have a daughter or a son that they need $25 and hopefully they can get their whatever, a cap and gown or something like that, to let them know that I love them, I'm still connected with them. In that instance, your honor, Mr. Henderson would not even need the evidence supporting the restitution amount, that he knows what the amount is and if he's just going to plead that he should get relief from it for personal circumstances, that was certainly something he had the opportunity to do in his first appeal. You just took the from it. Can I ask you a question? You said, I'm still trying to figure out if this is a Wolfe case or not. You said, is this a Wolfe case or not? This is a Wolfe case, yes. It is a Wolfe case, but you would say the Wolfe procedures don't apply to penalties. Wolfe does not specify that any separate procedures are necessary for a penalty phase and you could analogize it to a stringent due process protections in the guilt phase of a criminal trial than there are in the sentencing phase. Not to say that there are none in the sentencing phase, but there is that distinction that's made. So the particular procedures laid out in Wolfe don't apply, but we should still think of it as a Wolfe case? It's in that context. I wanted to touch as well on the issue of remedies. It appears that Mr. Henderson has disclaimed any claim for damages at this point and so I won't belabor that point, but just touch on the injunctive relief, which as we've argued is limited by the Prison Litigation Reform Act, which provides that prospective relief can't be any greater than necessary to correct the violation of a federal right. Here, vacating the restitution goes far beyond what's necessary to correct any violation here. There is no question as to Mr. Henderson's guilt he's waived any challenge to that finding. He was notified at the initial hearing that restitution would be imposed and that would be done to recruit the amount of costs that DOC incurred for the victim's medical treatment. Again, these are both matters that are beyond dispute, so the only thing that could be at issue here is what that specific dollar amount is and any dispute that's there would be around the margins. There's no indication that the $64 approximately that has been recovered to date. So whatever the correct amount of restitution would be, and the appellees submit that the amount that has been determined since 2015 is the correct amount, it is certainly going to be in excess of what's already been collected. And then removing the balance of the remaining restitution and just discharging that, there is a more narrowly tailored option here which would be to provide another hearing and that step has already been taken. So there's no injunctive relief in a proper scope under the PLRA that's remaining to be awarded here. Finally, I want to touch on the question regarding the state claims. As your honors are aware, the district court declined to exercise supplemental jurisdiction over those claims. That is a matter over which the court has broad discretion and the typical practice is what the court did in this instance where if the federal claims are dismissed before trial, the court is going to decline to exercise supplemental jurisdiction. The discretionary considerations here do support the court's exercise of discretion, particularly as Mr. Henderson alludes to the prolonged and complex history of this case. I won't disagree with that description that this time has the actual substance of Mr. Henderson's state law claims been litigated. Aside from putting the Virginia constitutional claim in his complaint, there's been no distinct argument that he's raised prior to appeal that would not overlap entirely with the 14th Amendment arguments that have been litigated at length below. And in fact the Virginia Supreme Court in the Chivay case has stated that state due process under the Virginia Constitution is coextensive with the 14th Amendment. So those cases rise and fall together. There's no distinct analysis of a Virginia due process claim in comparison to a federal due process claim. Counsel, I'm sorry I bet you thought you were almost done, but I do have, I just want to make sure I have your position straight. It's that the 2015 original process was plenty. What if, just hypothetically, I thought actually you get sort of full wolf process which didn't happen here until 2021. If that were so, are you arguing or is your position that the six-year delay didn't violate due process or at that point are you just arguing harmless error? Do you have it, can you defend the six-year delay assuming that it was only the 2021 process that made this okay? I would actually say those those issues do kind of dovetail. The consideration of due process considers the significance of the delay under a standard of prejudice to, in this case to Mr. Henderson, and so looking at that prejudice and at the harmless error are sort of two sides of the same coin. But our position would be if the court were to find any deficiency in the 2015 hearing, that was cured by the 2021 hearing. There was no material loss of any relevant evidence by the time the 2021 hearing occurred, and so there's just little likelihood of any mistake that would have occurred during the later hearing. And if there are no further questions, appellees would respectfully request that the district court be affirmed. Thank you, Mr. Davis. Thank you, Your Honor. May it please the court. In the time I have remaining, I'd like to respond first and foremost to defendant's position that the 2015 hearing was was quote-unquote enough and discuss why that is just plainly not the case. First, the final restitution amount of five thousand one hundred seventy six dollars and nineteen cents had not yet even been held. In fact, hearings officer Harmon, who presided over that first 2015 hearing, expressly said to Mr. Henderson that she would reconvene the hearing once the final restitution amount had been determined, and that can be found on page 248 of the joint appendix. Mr. Henderson, immediately after the 2015 hearing that took place on November 10, 2015, was then unilaterally transferred to another prison, only to receive a one-page notice of restitution document found on page 191 of the joint appendix on December 30th, 2015, that included essentially nothing more than a liquidated sum of that $5,000 amount and no explanation about it. So that's why the 2015 hearing alone cannot have been enough for due process purposes. We also know that the 2015 hearing was insufficient because, as defendants admitted both in their motion to stay on this court, specifically on page 8, defendants determined that a reconvened hearing as to the restitution amount was appropriate. We strongly suspect that that determination was made because defendants know what we know, which is that at that time, that is by 2021, Mr. Henderson had received no due process at all, thus necessitating a reconvened hearing of some kind. Do you have a response to your colleague's argument that that may well be why they reconvened the hearing, but once they did, like the kind of normal injunctive relief a court would order is moot, like what we would normally say, had there not been that second hearing, and we thought that you were right that the process that was provided in 2015 was insufficient, normally the remedy would be have a hearing, but here that already happened. I think it's because the resulting delay during the intervening period is the harm over which Mr. Henderson originally sued. At the time Mr. Henderson sued, in 2018, he had gone for three years in a Virginia prison with no access to his prison trust account. The reconvened hearing in that sense, and I hope it's not too flippant for me to say, appears to have been little more than a litigation strategy. Mr. Henderson had moved... It may well have been a litigation strategy, but I'm really struggling with why it doesn't render a request for injunctive relief moot, because the normal remedy, like perhaps, like they just got ahead of us and gave you the hearing to which you're entitled, but so now what do we do? I see, Your Honor. I think mootness doctrine would not strictly apply to this case for two reasons. The first is because, as I've said, the reconvened hearing in no way ameliorated the harm Mr. Henderson has suffered. There's still very much a live controversy in this case, particularly that given that defendants could start debiting Mr. Henderson's trust account again today if they wanted to. Because there was a full Wolf hearing with all the process available, and then there were appeals, and there has been a determination that this is the amount owed. And I think that's where the second exception, Your Honor, to mootness doctrine comes in, the voluntary cessation doctrine. The defendants reconvened the hearing, and I think this is a very generous reading of the reconvened hearing, to essentially render Mr. Henderson's claims for injunctive relief moot. That is not enough to... In fairness, don't we kind of want prison officials, if something is brought to their attention, to fix it? And then normally you would be asking for damages. We can no longer provide injunctive relief because you have the hearing. And so you'd ask for damages, which don't become moot, but you're not asking for damages. So I'm kind of really wrestling with the remedy question in this case. I think that's right, Your Honor, and that's why Mr. Henderson has at all times been seeking a permanent prohibitory injunction against further collection of the outstanding $5,111 amount. But he owes that. I mean, he owes that. How is that appropriate relief? He may owe that, Your Honor. No, he does owe that. It has been through... I think you concede, right, that the process at the 2021 hearing was sufficient? We do concede that. Okay, so he had sufficient process. There has been a determination, subject to process, that you agree was permissible, that this is how much money he owes. He does, I mean, for legal purposes, he owes the money. I agree, Your Honor, with one qualification that we have at no time from this now six-year-long litigation seen the evidence of that $5,000 amount. We have no idea if a restitution of that sum is an aberration in the prison context, if it's totally normal. Why does it matter if you agree that the process provided in 2021 was sufficient? I don't think it sort of matters. Now we have the answer at the end of the process that you agree was sufficient. How come you can keep litigating it? I think it matters just as a basis of first legal principle that the foundation of the due process clause of the First Fourteenth Amendment is basic fairness. Yeah, I'm just trying to figure out what's the remedy at this point, and I don't see how the remedy is you don't have to pay the money that you agree you owe. That is the only remedy that would be available to Mr. Henderson? Because the prison, like, jumped the gun and gave you the remedy we would normally, and because you're not seeking damages. I would just add on that point that the 20, there are other procedural inadequacies with the 2021 hearing itself. For example, hearing officer Harmon, who sat on the... Wait, wait, wait, now you're saying the 2021 hearing violated due process because this is the first time I'm hearing that. We're not arguing that that hearing alone violated due process. To the extent Mr. Henderson should be required for a showing of prejudice resulting from the delay and requiring the court to delve into what happened in the 2021 hearing. My point was only that hearing officer Harmon, who sat on the 2015 hearing, was no longer even, and calculated the restitution amount, was no longer even employed at that prison and therefore had nothing to do with the 2021 hearing, which again potentially brings the total cost of this case. If there are no further questions, I will conclude and say that in sum, the process afforded to Mr. Henderson in this case was, as a constitutional matter, both too little and too late and this court should reverse on that basis. Thank you. Thank you so much, Mr. Osborne. Thank you as well, Mr. Davis. I want to note that you were caught upon it and we appreciate you doing it. On behalf of the Fourth Circuit, we need lawyers like yourself and law students to come here and thank you, Professor, and the Demon Deacons have spoken well today and we appreciate you being here and also obviously, Mr. Davis, to acknowledge your representation as well. We'll come down to Greek Council and we'll proceed to our next case.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris